UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LOGAN MILLS                                          CIVIL ACTION

VERSUS                                               NO. 21-418

JAMES LEBLANC, SECRETARY,                            SECTION "A" (2)
LOUISIANA DEPT. OF CORRECTIONS,
ET AL.

## REPORT AND RECOMMENDATION

Plaintiff Logan Mills filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against Defendants Louisiana Department of Corrections Secretary James Leblanc, Warden Robert Tanner, Captain Ernestine Smith, Administrative Assistant Lisa Jenkins, and Administrative Assistant Cynthia Crain based on the allegations that the B.B. Rayburn Correctional Center's refusal to deliver his publications featuring non-nude photographs of celebrities and/or erotic books constituted a violation of his First Amendment right of free speech. ECF No. 1. This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), including statutory frivolousness review under 28 U.S.C. § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). Also pending before the Magistrate Judge is Plaintiff's Motion for Preliminary Injunction.[1] ECF No. 3.

Having considered the record, including Plaintiff's Complaint, his § 1983 Fact Statement, *Spears* hearing testimony, and the applicable law, the undersigned recommends that Plaintiff's

---

[1] Plaintiff filed a Motion for Entry of Temporary Restraining Order and Preliminary Injunction (ECF No. 3) in the Middle District of Louisiana on January 4, 2021. Before this matter was transferred to this Court, the Middle District of Louisiana denied Plaintiff's request for a temporary restraining order and ordered Defendants to file their responses to Plaintiff's request for a preliminary injunction. ECF No. 4.

First Amendment claim against Defendants Secretary James Leblanc, Warden Robert Tanner, Capt. Ernestine Smith, Administrative Assistant Lisa Jenkins, and Administrative Assistant Cynthia Crain be DISMISSED. Additionally, Plaintiff's Motion for Preliminary Injunction (ECF No.3) should be DENIED.

## I.    <u>BACKGROUND</u>

Plaintiff Logan Mills is a convicted inmate housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.  ECF No. 1, § II, at 3; ECF No. 22, at 1.  Mills initially filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. § 1983 in the United States District Court for the Middle District of Louisiana.  ECF No. 1, at 1.  After denial of the motion for temporary restraining order, the court transferred the case to this court of proper venue. ECF Nos. 4, 9.

### A.    <u>Factual Allegations</u>

#### 1.  **The Complaint**

Mills sued Louisiana Department of Corrections ("DOC") Secretary James LeBlanc in his official capacity.  ECF No. 1, § III(B), at 4.  He named the remaining defendants, former RCC Warden Robert Tanner, Capt. Ernestine Smith, Administrative Assistant Lisa Jenkins, and Administrative Assistant Cynthia Crain, in their individual capacities.  *Id.* § III(C), at 4.  Mills alleges that Defendants violated his First Amendment rights to obtain from publishing companies certain photographs and publications, which he contends are not in violation of DOC regulations. *Id.* § IV, at 4-12.

As relief for the alleged violations, Mills seeks a declaratory judgment finding that the DOC regulations prohibiting sexually explicit literature and pictures of women in swimwear,

lingerie, and suggestive poses are unconstitutional; that the DOC's definition of nudity is unconstitutional; and that Defendants Tanner, Smith, Jenkins, and Crain violated his constitutional rights by refusing to address two of his administrative grievance complaints. *Id.* § V(A), at 12. He also seeks injunctive relief ordering Secretary LeBlanc to rescind DOC Regulation No. C-02-009's prohibition against pictures of women in swimwear, lingerie, and suggestive poses, and to revise the regulation's definition of sexually explicit material. *Id.* § V(B), at 12 He further seeks injunctive relief mandating that Secretary LeBlanc rescind other portions of the regulation dealing with prohibited photographic content and alter the language governing a warden's authority to reject publications. *Id.* at 12-13. Finally, he seeks an order compelling Secretary LeBlanc to forward to him all of the rejected pictures and publications addressed herein. *Id.* at 13.

a.    <u>Pictures and Picture Catalog from Acme Publications</u>

Mills alleges that on June 14, 2019, he ordered 50 pictures and a picture catalog from Acme Publications, which sells non-nude photographs of celebrities. *Id.* § IV(A) ¶ 1, at 5. He received an envelope through the prison mail from Acme Publications on July 24, 2019, but it contained only eight 4x6 photographs and no catalog or receipt. *Id.* ¶ 2.

Mills wrote a letter[2] to Sergeant Chris Seal, who was in charge of the mailroom, requesting written reasons why his non-nude materials were confiscated. *Id.* ¶ 3. Mills alleges that he did not receive a response, but on July 28, 2019, when his father visited the prison, Sgt. Seal told him that some of Mills' pictures were confiscated because they were "racy." *Id.* ¶ 4. He claims that Sgt. Seal offered to let Mills' father take the confiscated pictures, but his father refused so that Mills could challenge the confiscation. *Id.*

---

[2] ECF No. 1-2, at 1 (Ex. A, Letter, 7/24/19).

On July 31, 2019, Mills received a rejection notice[3] from Sgt. Seal dated July 27, 2019, indicating that the confiscated pictures contained nudity. *Id.* ¶ 5. The notice also provided other reasons for the rejection, including "lingerie," "swimwear worn during activities in which swimwear is not normally worn," and "suggestive poses." *Id.* The notice advised Mills that the items would be destroyed per prison policy if he did not arrange to send them home or have them picked up. *Id.* By letters dated July 31, 2019, and August 7, 2019,[4] Mills requested that the items be retained until he could exhaust administrative and judicial review of the rejection. *Id.* at ¶¶ 6-7. Mills claims that he did not receive a response to his letters. *Id.*

Mills filed an administrative grievance complaint[5] on August 19, 2019, "asserting that the DOC had no legitimate penological interest in prohibiting pictures of women in lingerie, swimwear, and 'suggestive poses,' and that their categorical exclusion actually creates security issues because they have the undeniable effect of encouraging homosexual behavior amongst inmates." *Id.* ¶8, at 6. Mills received a second rejection notice[6] from Sgt. Seal stating that the Department of Public Safety and Corrections ("DPSC") had banned all orders from Acme Publications. *Id.* ¶ 9.

In an August 20, 2019 conversation, Mills told Capt. Smith that he was not aware of a DOC regulation that prohibited pictures of women in lingerie, swimwear, and suggestive poses. *Id.* ¶ 10. He advised her that he had received about 12 issues of *American Curves* and several issues of *Smooth* and *Smooth Girl* that had not been rejected. *Id.* He told Capt. Smith that he intended to sue because the restrictions were a violation of his First Amendment rights and amounted to

---

[3] *Id.* at 4 (Ex. C, Photographs Notice of Rejection, 7/27/19).
[4] *Id.* at 5 (Ex. D, Letter, 7/31/19); *id.* at 6 (Ex. E, Letter, 8/7/19).
[5] *Id.* at 7-9 (Ex. F, Administrative Grievance Complaint, 8/19/19).
[6] *Id.* at 10 (Ex. G, Photograph Notice of Rejection, 8/19/19).

4

Christian-based influences used to reject his mail. *Id.* Capt. Smith told Mills she would look into the matter. *Id.* Mills claims that, on August 26, 2019, he was told by mailroom personnel that he would be given the pictures, which he received the next day during mail call. *Id.* at ¶11.

Mills further claims that, on September 3, 2019, he wrote a letter[7] to Warden Tanner requesting that he be provided with an acceptance/rejection letter for the grievance complaint he submitted on August 19, 2019. *Id.* ¶ 12. His letter argued that the grievance was not moot because he had not been given the color picture catalog that was with his original order. *Id.* After he received no response, his mother called the prison on September 9, 2019, and spoke to Capt. Smith about the prison's failure to give him an acceptance/rejection letter. *Id.* ¶13. Capt. Smith told his mother she would look into it and call her back, but she never returned the call. *Id.*

On September 16, 2019, Mills filed a new grievance complaint[8] concerning Warden Tanner's failure to acknowledge or respond to the August 19, 2019, grievance complaint. *Id.* ¶14. The grievance complaint was accepted for review.[9] *Id.* ¶ 15, at 7. On October 3, 2019, Mills received the first step response[10] from Warden Tanner in which the Warden claimed that he had not received the August 19, 2019 grievance or the September 3, 2019 letter from Plaintiff Mills. *Id.* ¶ 16. Mills claims that the response also referenced DOC policies prohibiting pictures containing nudity and sexually explicit material, and noted that the 50 pictures were given to him after review by Capt. Smith. *Id.* Mills alleges that he filed the second step appeal[11] for the sake of exhausting administrative remedies, and it was denied on October 31, 2019.[12] *Id.* ¶ 17.

---

[7] *Id.* at 11 (Ex. H, Letter, 9/3/19).
[8] *Id.* at 12-13 (Ex. I, Administrative Grievance Complaint, 9/16/19).
[9] *Id.* at 14 (Ex. J, Offenders Relief Request Form, 9/17/19).
[10] *Id.* at 15 (Ex. K, First Step Response Form, 10/3/19).
[11] *Id.* at 15-16 (indicating intent to appeal to Step Two).
[12] *Id.* at 17 (Ex. L, Second Step Response Form, 10/31/19).

   b. *Nightfall: A Vampire Queen Crossover Novel* Ordered from Sureshot Books Publishing LLC

  Mills alleges that, on June 25, 2019, he ordered a book entitled *Nightfall: A Vampire Queen Crossover Novel* from Sureshot Books Publishing LLC.  ECF No. 1 § IV(B) ¶18, at 7.  On August 12, 2019, he wrote to the publishing company about the status of his order.[13]  *Id*. ¶ 19.  On August 19, 2019, he received a reply[14] showing that the book had been delivered to RCC on July 15, 2019. *Id*. ¶ 20.

  Mills claims that he wrote a letter[15] to the mailroom asking why he had not received the book or a notification about it.  *Id*. ¶ 23, at 7-8.  He did not receive a response to the letter.  *Id.*  On August 23, 2019, he instead received a "Notice of Pending Review,"[16] indicating that the book was received on August 23, 2019, and forwarded to the regional warden for review and determination of acceptability.  *Id*. ¶ 24, at 8.  He further states that, on September 13, 2009, he received a "Notice of Rejection,"[17] stating that the book contained "sexually explicit material." *Id*. ¶ 25.  Mills wrote a letter[18] to the mailroom advising that he was appealing the rejection of the book.  *Id*. ¶ 26.

  On October 7, 2019, Mills filed a grievance complaint[19] challenging the DOC policy on sexually explicit material and literature.  *Id*. ¶ 27.  He asserts that DOC's policy was not based on a legitimate penological interest, but instead reflected the personal prejudices of DOC officials at RCC.  *Id.*  Mills indicated that, despite his lengthy time in Louisiana prisons, he was unaware of a

---

[13] *Id*. at 18 (Ex. M, Letter, 8/12/19).
[14] *Id*. at 19 (Ex. N, USPS Tracking page showing delivery on 7/15/19).
[15] *Id*. at 23-24 (Ex. Q, Letter, 8/20/19).
[16] *Id*. at 25 (Ex. R, Notice of Pending Review of Publication, 8/23/19).
[17] *Id*. at 26 (Ex. S, Publications Notice of Rejection, 9/13/19).
[18] *Id*. at 27 (Ex. T, Letter, 9/18/19).
[19] *Id*. at 28-30 (Ex. U, Administrative Grievance Complaint, 10/7/19).

DOC policy prohibiting sexually explicit literature because he had been allowed to order about eighteen erotic and/or BDSM-themed[20] books at other Louisiana prisons and at RCC. *Id*. He also claims that he pointed out that the RCC library had numerous erotic books, including some that were known to be on the DOC's Rejection List. *Id*.

On October 13, 2019, Mills wrote Warden Tanner requesting an acceptance/rejection letter[21] regarding the grievance complaint. *Id*. ¶ 28. Three days later, he received a notice indicating his grievance was accepted.[22] *Id*. ¶ 29. The next day, he also received a letter from Warden Tanner's secretary, Lisa Jenkins, confirming acceptance of the grievance.[23] *Id*. ¶ 30.

Mills states that he received a first step response[24] to the grievance on November 25, 2019, indicating that the book was rejected in accordance with prison policy. *Id*. ¶ 31. His second step appeal also was denied on December 22, 2019.[25] *Id*. ¶ 32.

c.    Three Issues of *American Curves* and Krasnya Picture Catalog

i.    *American Curves* Magazine

On August 11, 2019, Mills' mother ordered three issues of *American Curves* for him from backissues.com. *Id*. § IV(C) ¶ 33, at 8. Mills claims that he chose those three issues (January, May and July of 2010) because he knew other inmates had received them nine years earlier. *Id*. ¶ 34, at 9. He also alleges that he obtained a copy of the Department Rejection List and these issues were not on it, although the April 2010 issue was. *Id*. He further alleges that, in 2011, several inmates had subscriptions to *American Curves* when it was in print. *Id*.

---

[20] "BDSM" is an acronym referencing bondage, discipline (or domination), sadism (or submission), and masochism. https://dictionary.cambridge.org/us/dictionary/english/bdsm.
[21] ECF No. 1-2, at 31 (Ex. V, Letter, 10/13/19).
[22] *Id*. at 32 (Ex. W, Offenders Relief Request Form, 10/16/19).
[23] *Id*. at 33 (Ex. X, Letter from Lisa Jenkins, Administrative Assistant, 10/16/19).
[24] *Id*. at 34-35 (Ex. Y, First Step Response Form, 11/25/19).
[25] *Id*. at 36 (Ex. Z, Second Step Response, 12/22/19).

Mills claims that the magazines were delivered to the prison on August 24, 2019, and he was not notified. *Id*. ¶ 35. When his mother called the prison to check on the magazines on September 3, 2019, she was told that Mills should have received a "Notice of Pending Review." *Id*. ¶ 36. He received the notices[26] from the mailroom that night. *Id*. ¶ 37.

Mills claims that on September 11, 2019, he wrote a letter[27] to Warden Tanner asking for the magazines because they had been approved nine years earlier. *Id*. ¶ 38. The Warden responded the next day advising Mills that the magazines were not acceptable under current DOC regulations.[28] *Id*. ¶ 39. On September 23, 2019, he requested and received a formal rejection letter from the mailroom.[29] *Id*. ¶ 40. He also advised the mailroom he would appeal the rejection.[30] *Id*. ¶ 41.

### ii. *Krasnya Picture Catalog*

On August 31, 2019, Mills ordered a non-nude "BOP-friendly" picture catalog from Krasnya. *Id*. ¶ 42. On September 12, 2019, he received an envelope containing only a Krasnya order form with a note that this was all that Warden Tanner had approved for him to receive.[31] *Id*. ¶ 43. That night, he received a rejection notice for the picture catalog itself citing "Swimwear worn during activities in which swimwear is not normally worn," "Lingerie," and "Suggestive poses" as the reasons for rejection.[32] *Id*. ¶ 44. On September 18, 2019, he wrote the mail room to inform them that he would appeal the rejection, and he received no response. *Id*. ¶ 45, at 10.

---

[26] *Id*. at 37-39 (Ex. AA, Notice of Pending Review of Publication, 9/3/19). A separate notice was issued for each of the three issues.
[27] *Id*. at 40-41 (Ex. BB, Letter, 9/11/19).
[28] *Id*. at 42 (Ex. CC, Letter from Warden Tanner, 9/12/19).
[29] *Id*. at 43 (Ex. DD, Letter, 9/23/19); *id*. at 44 (Ex. EE, Publications Notice of Rejection, 9/23/19).
[30] *Id*. at 45 (Ex. FF, Letter, 9/26/19).
[31] *Id*. at 46-49 (Exs. GG, HH).
[32] *Id*. at 50 (Ex. II, Photographs Notice of Rejection, 9/11/19).

iii. *Complaints and Letters Sent to Prison Officials*

Mills further alleges that, on December 6, 2019, he filed a grievance complaint[33] challenging the rejection of the three *American Curves* issues and the Krasnya picture catalog. *Id*. ¶ 46. The grievance again argued that DOC had no legitimate penological interests in prohibiting pictures of women in lingerie, swimwear, and suggestive poses. *Id*. He also asserted that the categorical exclusion of these materials was encouraging homosexual activity among the inmates. *Id*. Mills alleges that, on December 18, 2019, he wrote a letter[34] to Warden Tanner asking for an acceptance/rejection letter for his grievance complaint. *Id*. ¶ 47. On December 30, 2019, having received no response, Mills mailed a copy of the grievance complaint to Secretary LeBlanc with a letter explaining why he was bypassing Warden Tanner.[35] *Id*. ¶ 48.

Mills claims that, on January 6, 2020, his mother called RCC to ascertain whether the prison was holding the magazines and catalog while Mills pursued review of the rejection. *Id*. ¶ 49. He alleges that Sgt. Angela Sincere in the mailroom told his mother she would call her back with an answer, but she never did call his mother. *Id.*

He further alleges that, on February 18, 2020, he received a letter[36] from Warden Tanner's office indicating that the letter sent to Secretary LeBlanc at the DOC was not considered a grievance to be handled as a sensitive/emergency matter and was returned to Warden Tanner for response. *Id*. ¶ 50, at 10-11. The letter also advised Mills that the he had not followed proper procedure and that the Warden's office had not received a grievance complaint or letter. *Id*.

---

[33] *Id*. at 51-53 (Ex. JJ, Administrative Grievance Complaint, 12/6/19).
[34] *Id*. at 54 (Ex. KK, Letter, 12/18/19).
[35] *Id*. at 55 (Ex. LL, Letter, 12/30/19).
[36] *Id*. at 57 (Ex. NN, Letter from Cynthia Crain, Administrative Program Specialist C, 2/18/20).

Mills claims that, seven months later, on September 23, 2020, he wrote a letter[37] to Capt. Carol Jordan, a supervisor in the RCC Legal Programs Department, asking for a copy of DOC Regulation No. C-02-009 as it appeared before March 2012. *Id.* ¶ 51, at 11. He was provided with a copy of the regulation effective January 2007.[38] *Id.* ¶ 53. Mills claims that he wrote Capt. Jordan again on September 25, 2020, to ask for a copy of the regulation as it existed before January 2007 so he could determine when the department added the "prohibition of pictures of women in lingerie, suggestive poses, etc."[39] *Id.* ¶ 54. He claims that he did not receive a response to the second letter.

Mills also claims that he wrote Capt. Jordan again on October 13, 2020, requesting a copy of Department Regulation No. C-02-009 as it appeared before January 2007, and he received no response.[40] *Id.* ¶ 55. On October 19, 2020, he wrote to Colonel Darryl Mizell in Support Services, which he claims oversees the Legal Programs Department, to request the pre-2007 version of the regulation and again did not receive a response.[41] *Id.* ¶ 57.

Mills further claims that on October 22, 2020, he spoke with Sgt. Pierce, who worked the night shift on his tier, about the restrictions on nudity and other pictures of women. *Id.* ¶ 58, at 11-12. Mills claims that Sgt. Pierce agreed that the policies restricting pictures of women in lingerie, etc., contributed to the problem of inmates masturbating around female guards. *Id.*

---

[37] *Id.* at 58 (Ex. OO, Letter, 9/23/20).
[38] *See id.* at 59 (Ex. PP, Letter from Captain Jordan, 9/23/20) (stating that Captain Jordan sent his inquiry to someone who may be able to access documents prior to 2012).
[39] *Id.* at 60 (Ex. QQ, Letter, 9/25/20).
[40] *Id.* at 61 (Ex. RR, Letter, 10/13/20).
[41] *Id.* at 62 (Ex. SS, Letter, 10/19/20).

iv.    *Responses to Mills' Grievance Complaints*

Attached to Mills' Complaint are purported copies of the letters and grievance complaints Mills sent to prison officials and the responses he received from prison officials.  The responses provide the prison officials' reasons for rejecting the items about which Mills complains.  The Acme Publications photographs were rejected for multiple reasons listed on the form rejection notices dated July 27, 2019 and August 19, 2019: exposed genitals; exposed genital areas (pubic hair, anal area, buttocks); genitals or genital areas are covered by transparent materials; swimwear worn during activities in which swimwear is not normally worn; lingerie; and suggestive poses.[42] In addition, the August 19, 2019, form indicates that "offenders are not allowed to order from acme publications due to DPSC headquarters banning all orders form this company."[43]

The rejection notice dated September 13, 2019, indicates that the book *Nightfall: A Vampire Queen Crossover Novel* was rejected because it contained nudity or sexually explicit material.[44]  As a result of the review of Mills' order, the novel was placed on the rejected publication list.[45]

The three issues of *American Curves* were rejected because they did not comply with current regulations and were put on the rejection list.[46]

Finally, the picture catalog Mills ordered from Krasnya was rejected because the pictures involved exposed genitals, exposed genital areas (pubic hair, anal area, buttocks), genitals or

---

[42] *Id.* at 4, 10.
[43] *Id.* at 10.
[44] *Id.* at 26.
[45] *Id.*
[46] *Id.* at 44.

11

genital areas covered by transparent material, swimwear worn during activities in which swimwear is not normally worn, lingerie, and suggestive poses.[47]

### 2. Mills' Response to Court's § 1983 Order

Mills asserts that he seeks injunctive relief against Secretary LeBlanc because the challenged DOC regulations are not reasonably related to any legitimate penological interest, but are an exaggerated response based on personal prejudices of the prison officials. ECF No. 22, at 1-2. With regard to defendants Tanner, Smith, Jenkins, and Crain, Mills contends that their refusal to acknowledge two of his ARP grievances challenging the DOC regulations and several inquiries he made into the status of grievance complaints amounted to a "civil rights conspiracy". *Id*. at 2.

### 3. *Spears* Hearing Testimony

On June 1, 2021, I conducted a telephone conference with Plaintiff Mills and counsel for the Defendants participating in the conference call. ECF No. 23. Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny. The conference was electronically recorded.

During that hearing, Mills explained that he sued Warden Tanner, Capt. Smith, Jenkins, and Crain in their individual capacities because they were involved in the failure to respond to two of his administrative grievance complaints and several pieces of correspondence related to his efforts to challenge the DOC policy. He clarified that he is not suing these four defendants regarding the policy or the screening of materials based on the policy; he has sued them only with regard to their part in the grievance process.

---

[47] *Id*. at 50.

12

Mills did, however, sue Secretary LeBlanc in his official capacity only, challenging the DOC policy prohibiting photographs of swimwear and lingerie and other materials considered sexually explicit. He testified that he is not challenging the fact that the DOC has a policy prohibiting sexually explicit materials and stated he had no problem with DOC prohibiting nudity or real pornography. Rather, he is suing because the Louisiana DOC policies on literature and photographs are more restrictive than other states' policies, and he disagrees that all pictures of swimwear and lingerie are explicit. Mills reiterated his belief that DOC has an interest in preventing sexual harassment and homosexual activities, but he claims that DOC's definition of sexually explicit materials is overreaching and that DOC has no legitimate penological interest in preventing access to photographs of swimwear and lingerie or books that are not explicit. He believes that the restrictive policies in Louisiana are extreme compared to cases in other places that he has found through research on Westlaw. Mills contends that the overreaching policy is based on a "palpable Christian influence" in DOC and from prison officials. He testified that the current Warden said that he hoped Mills would find God one day.

Mills reiterated allegations from his complaint, specifically regarding his order of 50 photographs and a catalog, which he described as a sales book of thumbnail-sized pictures, from Acme Publications. He testified that the company only sells non-nude pictures of celebrities, and he is not sure what was depicted in the catalog because it was rejected and never given to him. He further stated that the prison officials initially gave him 8 of the 50 pictures and withheld 42 along with the catalog. After he challenged the withholding and had a discussion with Capt. Smith, he received all of the photographs, but he never received the catalog.

13

He testified that Warden Tanner, Capt. Smith, Jenkins, and/or Crain did not process or respond to his grievance filed before he received the pictures from Capt. Smith.  He speculated that they gave him the pictures so that they would not have to answer his grievance.  Mills stated that the prison officials do not have a time limit after a grievance is filed to reject or accept the grievance for further review.  He contends that the time clock for a response does not begin until after the grievance screener actually accepts the complaint for review.  The failure to respond to his grievance and his related correspondence is part of his claim against Defendants Warden Tanner, Capt. Smith, Jenkins, and Crain.  He stated that he filed a second grievance complaint complaining that these defendants did not process his first grievance.  He included Capt. Smith as a defendant because she was mentioned in the response to his second grievance.

Mills further testified that the novel *Nightfall: A Vampire Queen Crossover Novel* was also rejected for being sexually explicit material.  He stated that his challenge to this rejection falls within his claim against Secretary LeBlanc for the overly broad DOC policy.  He also stated that he was denied three issues of *American Curves* and a catalog of pictures from Krasnya.  He described *American Curves* as a women's lingerie magazine.  He stated that the magazine may have articles on sex, but they are educational, not erotic.  He testified that he ordered three specific back-issues of the magazine that he knew had been allowed nine years earlier.  Mills further stated that he obtained a copy of the DOC's rejection list, and these issues were not on it.  He also stated that, despite this, the magazines were rejected because they contained nudity or sexually explicit conduct.  Mills claimed that this demonstrates that the policy is inconsistently applied.

Mills also testified that, at the time, Warden Tanner was the Regional Warden who reviewed books and magazines for their compliance with DOC regulations.  Despite some prior

14

personal issues with Warden Tanner, Mills testified that he did not believe that the rejection of the magazines was personal to him or based on any protected characteristic. Instead, he believes that the rejection was based on Louisiana's overly restrictive policy and definition of sexually explicit material. Mills confirmed that he is not urging any claim against Warden Tanner individually based on the rejection of the magazine issues.

Mills testified that he seeks to hold Warden Tanner, Jenkins, and Crain liable for their failure to recognize and address his administrative grievance and related correspondence challenging the rejection of the *American Curves* issues and Krasnya photographs. He testified that the grievance and correspondence were addressed to Warden Tanner, and conceded that he did not speak to the Warden, Jenkins, or Crain about these matters.

Mills indicated that he sued Crain because she was the grievance screening coordinator responsible for determining whether his grievance complaint would be accepted or rejected. If it was accepted, it was supposed to be sent to the Warden for review. Mills further claims that Jenkins, who was the Warden's personal secretary, told his mother that she scanned all correspondence received in the Warden's office before passing it to Warden Tanner. He sued Jenkins because she must have been involved in the failure to properly process his correspondence and any grievance complaint accepted and sent to the Warden's office by Crain.

**B. <u>Plaintiff's Motion for Preliminary Injunction</u>**

Before the case was transferred to this court, Mills filed a Motion for Entry of Temporary Restraining Order and Preliminary Injunction seeking injunctive relief similar to that sought in the complaint. ECF No. 3. Specifically, in the motion, Mills seeks an order for Secretary LeBlanc to

return the previously rejected pictures and publications addressed herein.  He also seeks to prohibit

Secretary LeBlanc from enforcing the following policies:

(1)    Section 10(B) of Department Regulation No. C-02-009 which prohibits pictures of women in swimwear, lingerie, and suggestive poses;

(2)    DOC's additional definition of nudity in Section 10(A) of Department Regulation No. C-02-009; and

(3)    DOC's prohibition of sexually explicit literature with the exception of literature that features explicit homosexual activity or explicit sexual activity involving minors.

ECF No. 3, at 2.  Mills also seeks injunctive relief to limit the DOC regulations as follows:

(1)    regulations will only prohibit publications that feature nudity or sexually explicit conduct on a routine or regular basis or promote themselves based on such depictions in the case individual one-time issues, with "nudity" to be defined per Section 7(E) of Department Regulation No. C-02-009 and with "sexually explicit conduct" defined as pictorial depictions of actual or simulated sexual acts including intercourse, oral sex, or masturbation; and

(2)    regulations will only prohibit individual photographs that contain nudity under Section 7(E) of Department Regulation No. C-02-009 or that contain sexually explicit conduct as defined above.

ECF No. 3, at 2; ECF No. 3-1.

Mills asserts that he is entitled to the injunctive relief because he is likely to succeed on the

merits.  ECF No. 3-1, at 2.  He argues that the DOC regulations prohibiting sexually explicit and

other nude materials are not based on legitimate government interests.  *Id*. at 5, 11.  Instead, he

argues that the regulations are arbitrarily enforced and discretionary rejection is based on the

personal motivations of the prison officials.  *Id*. at 6, 11, 14.  He also claims he will face irreparable

injury because the restrictions violate his First Amendment rights.  *Id*. at 21, 23.

The Honorable Brian A. Jackson of the Middle District of Louisiana denied the motion for

temporary restraining order under Fed. R. Civ. P. 65(b).  ECF No. 4, at 1-2.  He also ordered

16

briefing from the defendants on the preliminary injunction request.  *Id*.  The record reflects that, at that time, the defendants had not been served with summons, Mills' motion, or the order for briefing.[48]

## II.    LEGAL STANDARDS

### A.    Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[49]  A prisoner's *in forma pauperis* complaint may be dismissed *sua sponte* at any time if the court determines that the complaint is frivolous or malicious or fails to state a claim on which relief may be granted.[50]  A claim is frivolous if it "lacks an arguable basis in law or fact."[51]  A claim lacks an arguable basis in law if it is "'based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"[52]  A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . .  [or] rise to the level of the irrational or wholly incredible . . . ."[53]  A court may not dismiss a claim simply because the facts are "unlikely."[54]  A complaint fails to state a claim

---

[48] Plaintiff's certificate of service on the motion indicates that he only sent a copy of the motion to Secretary LeBlanc.  ECF No. 3, at 3.

[49] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).

[50] 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); 42 U.S.C. § 1997e(c)(1); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

[51] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[52] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[53] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (citation omitted).

[54] *Id.*

on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[55]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim which is dismissed under one rule does not "invariably run afoul" of the other.[56]  If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[57]  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[58]

## B.  The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[59]  The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[60]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[61] The information elicited at such an evidentiary hearing is in the nature of an amended complaint

---

[55] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[56] *See also Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d) (current version at 28 U.S.C. § 1915(e))).

[57] *Id.*

[58] *Id.*

[59] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).

[60] *Id.*

[61] *Davis*, 157 F.3d at 1005–06.

or more definite statement under Rule 12(e).[62]   The testimony from the *Spears* hearing will supersede the allegations of the plaintiff's complaint.[63]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[64]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely on documents as additional evidence if they are properly identified, authentic and reliable.[65]  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."[66]

## C.  **Standards for Issuance of a Preliminary Injunction**

A preliminary injunction under Fed. R. Civ. P. 65(a) "is an extraordinary remedy that is issued only when a party does not have an adequate remedy at law."[67]  The granting of an injunction is the exception, not the rule.[68]  To be eligible for a preliminary injunction, the movant must demonstrate the following:

(1)    a substantial likelihood of success on the merits;
(2)    a substantial threat of irreparable injury;
(3)    the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and
(4)    granting the injunctive relief will not disserve the public interest.[69]

Courts should issue a preliminary injunction only when the movant "clearly carried the burden of persuasion on all four requirements."[70]

---

[62] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).
[63] *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).
[64] *Spears*, 766 F.2d at 182.
[65] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992); *Wilson*, 926 F.2d at 482).
[66] *Id.*
[67] *Dennis Melancon, Inc. v. City of New Orleans*, 889 F. Supp. 2d 808, 815 (E.D. La. 2012).
[68] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (citation omitted).
[69] *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017).
[70] *Planned Parenthood v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (quoting *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003)) (internal quotation marks omitted).

In the prison setting, requests for a preliminary injunction are "viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'"[71]   Except in extreme circumstances, federal courts are reluctant to interfere with matters of prison administration and management of inmates.[72]   Additionally, in accordance with the Prison Litigation Reform Act, "preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the federal right, and be the least intrusive means necessary to correct the harm."[73]

Rule 65(c) provides that the issuance of a preliminary injunction shall take place only "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  However, in determining the proper amount of security, a court "may elect to require no security at all."[74]

## III.    LAW AND ANALYSIS

### A.  Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

---

[71] *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).
[72] *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971) (affirming denial of injunction for inmate to obtain release from administrative segregation).
[73] *Hood v. Vessel*, No. 13-303, 2013 WL 12121562, at *1 (M.D. La. May 14, 2013) (citing 18 U.S.C. § 3626(a)).
[74] *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978) (per curium); *see also Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 & n.23 (5th Cir. 1986); *EOG Res. Inc. v. Beach*, No. 02-60415, 2002 WL 31730385, at *1 n.2 (5th Cir. Nov. 26, 2002) (court has discretion to issue injunctions without security).

secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[75]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[76]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[77] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[78] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[79] In other words, a plaintiff must satisfy three elements to establish § 1983 liability:

    (1)    deprivation of a right secured by the U.S. Constitution or federal law;
    (2)    that occurred under color of state law; and
    (3)    was caused by a state actor.[80]

## B. Claims Against Defendants Tanner, Smith, Jenkins, and Crain

Mills alleges that Warden Tanner, Capt. Smith, and the Warden's assistants, Jenkins and Crain, each in his or her individual capacity, violated his constitutional rights when they mishandled, ignored, or failed to respond to two of his administrative grievance complaints and three pieces of correspondence he wrote to Warden Tanner relating to the rejection of photographs and other materials addressed in this Complaint.

---

[75] 42 U.S.C. § 1983.

[76] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

[77] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[78] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

[79] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).

[80] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

21

The Fifth Circuit has repeatedly held that an inmate does not have a constitutional right to an adequate and effective grievance procedure, or to have his complaints investigated and resolved to his satisfaction:[81]  An inmate has no protected liberty interest in the adequacy or the result of prison administrative grievance procedures.[82]  Indeed, prisoners do not have a federally protected liberty interest in having grievances resolved to their satisfaction, and "an alleged § 1983 due process violation for failure to investigate grievances is indisputably meritless."[83]  Without a constitutional right at issue, Mills' § 1983 claims against defendants related to the alleged mishandling or non-response to his grievances and related letters are frivolous.

Mills also asserts that these defendants conspired or acted jointly to misplace or ignore his grievances and letters rather than properly process his grievances and letters.  This claim also is frivolous.  A § 1983 conspiracy claim requires a plaintiff to allege that the defendants acted together with specific intent to violate a protected constitutional right.[84]  "[A] conspiracy claim is not actionable without an actual violation of section 1983."[85]  As Mills cannot state a § 1983 claim based on alleged violations or failures in the grievance process, he also cannot base a § 1983 conspiracy claim on the mishandling of or disregard for his grievances and letters.[86]  There is no

---

[81] *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013); *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).

[82] *Smith v. Horton*, 670 F. App'x 872, 873 (5th Cir. 2016) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (emphasis added).

[83] *Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (citing *Geiger*, 404 F.3d at 374).

[84] *McKinney v. McDuffie*, 789 F. App'x 413, 416 (5th Cir. 2019); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (for conspiracy under § 1983, a plaintiff must show "the existence of a conspiracy involving state action and [] a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.").

[85] *Pfannstiel*, 918 F.2d at 1187 (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960), *cert. denied*, 366 U.S. 955 (1961)).

[86] *See Edwards v. Turner*, No. 13-CV-2416, 2014 WL 991920, at *3 (W.D. La. Mar. 13, 2014) ("Because Plaintiff does not have a substantive right to the grievance process, the interference with that process by the defendants does not state a constitutional claim.").

§ 1983 conspiracy claim where the alleged conspiracy does not involve a constitutional right. Accordingly, Mills' § 1983 conspiracy claim should be dismissed as frivolous.

## C. **Claims Against Secretary LeBlanc**

Mills seeks declaratory and prospective injunctive relief against Secretary LeBlanc, who is sued only in his official capacity, based on Mills' challenge to the constitutionality of the DOC policies restricting access to sexually explicit materials. For the reasons that follow, although Mills' claims seeking prospective injunctive relief against Secretary LeBlanc, in his official capacity, are not barred by the Eleventh Amendment, the claims against Secretary LeBlanc should be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A as frivolous and otherwise for failure state a claim for which relief can be granted, even under the broadest reading of Mills' Complaint.[87]

### 1. **Prospective, Injunctive Relief**

Under the Eleventh Amendment, "[c]itizens may not bring suit against a state or any instrumentality thereof without the state's consent."[88] "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'"[89] In Louisiana, the DOC over which the DOC Secretary presides, is a state agency for purposes of the Eleventh Amendment.[90] The United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity. By statute, Louisiana has refused any

---

[87] The court must "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'" *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore*, 30 F.3d at 620.

[88] *Rodriguez v. Tex. Comm'n. on the Arts*, 199 F.3d 279, 280 (5th Cir. 2000) (citing U.S. CONST. amend. XI).

[89] *Med. RX/Sys., P.L.L.C. v. Tex. Dept. of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71, (1989)).

[90] *Champagne v. Jefferson Par. Sheriff's Office*, 188 F.3d 312, 313-14 (5th Cir. 1999); LA. REV. STAT. ANN. § 36:403.

such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. *See* LA. REV. STAT. ANN. § 13:5106(A).

Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.[91]

While a State may expressly waive Eleventh Amendment immunity, Louisiana has declined to do so.[92] Thus, Louisiana, its agencies, and its officials in their official capacity enjoy Eleventh Amendment immunity from suit for *monetary damages*.[93]

For similar reasons, a State and its agencies generally are not considered "persons" for purposes of § 1983. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."[94] Therefore, a suit against the official is regarded as a suit brought directly against the State itself.[95] For these reasons, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."[96]

When, however, the state official is sued only in an official capacity for declaratory and prospective injunctive relief, the same rule does not apply. In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment sovereign immunity when a plaintiff brings suit "for injunctive or declaratory relief against individual state officials

---

[91] *Cozzo v. Tangipahoa Par. Council-President Gov't.*, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted); *McGuire v. Lafourche Par. Work-Release Facility*, No. 09-6755, 2009 WL 4891914, at *3-4 (E.D. La. Dec. 4, 2009); *accord Champagne*, 188 F.3d at 313-14.

[92] *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Welch v. Dep't. of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986).

[93] *Will*, 491 U.S. at 66; *Hyatt v. Sewell*, 197 F. App'x 370 (5th Cir. 2006); *McGuire*, 2009 WL 4891914, at *3; *Levy v. Office of Legislative Auditor*, 362 F. Supp. 2d 729, 735 (M.D. La. 2005); *Goins v. Louisiana*, No. 04-1159, 2004 WL 2694899, at *2-4 (E.D. La. Nov. 22, 2004); *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185–86 (5th Cir. 1986).

[94] *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).

[95] *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Monell v. Dep't. of Soc. Servs. of New York*, 436 U.S. 658, 690 n.55 (1978)).

[96] *Id.*

24

acting in violation of federal law."[97]   Thus, in official capacity suits seeking declaratory, prospective injunctive relief, the state officer is considered a "person" under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State."[98]   In that situation, a plaintiff may pursue declaratory and injunctive relief against the State or its agencies by naming the appropriate state official in an official capacity in connection with the claim.[99]

To determine whether the *Ex Parte Young* exception to the Eleventh Amendment applies, "a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" against a state actor in an official capacity.[100]   "For the exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'"[101]   In other words, when a state actor is not statutorily tasked with enforcement of the issues involved in the suit, the defendant is not a proper defendant under the *Ex Parte Young* exception to Eleventh Amendment immunity.[102]

Mills' complaint seeks declaratory and prospective injunctive relief against Secretary LeBlanc, in his official capacity, related to the DOC policies on sexually explicit materials.

---

[97] *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)).

[98] *Will*, 491 U.S. at 71, n.10 (citing *Graham*, 473 U.S. at 167 n.14; *Young*, 209 U.S. at 159-160 ).

[99] *See Saltz v. Tenn. Dep't. of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir.1992); *Young*, 209 U.S. at 155-56 *Edelman v. Jordan*, 415 U.S. 651, 664 (1974); *Brennan v. Stewart*, 834 F.2d 1248, 1252-53 (5th Cir. 1988).

[100] *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

[101] *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Young*, 209 U.S. at 157).

[102] *Id.* at 998; *see also Morris v. Livingston*, 739 F.3d 740, 745-46 (5th Cir. 2014) (finding that the Texas Governor was not responsible for enforcement of statute requiring inmates to pay health care fees and was an improper defendant who was immune from suit seeking prospective injunctive relief).

Broadly construing his *pro se* claims, Mills has named Secretary LeBlanc in his official capacity as the state officer responsible for DOC policies prohibiting and defining sexually explicit materials and related terminology.  In Louisiana, the Secretary is responsible for the policies of the DOC.[103]  Therefore, Secretary LeBlanc, in his official capacity, may be sued for declaratory and prospective injunctive relief under the *Ex Parte Young* exception to Eleventh Amendment immunity.

### 2.  DOC Policy on Sexually Explicit Material

Mills recognizes that the DOC and prison officials have a right to maintain policies like Department Regulation C-02-009, which prohibits sexually explicit materials and publications involving nudity and depicting or encouraging non-consensual homosexual activities, both of which he concedes are contrary to the goals of the prison systems.  He contends, however, that DOC officials go beyond constitutional bounds and fail to advance legitimate penological goals when they exaggerate their response to sexually explicit material by prohibiting all photographs of women in swimwear, lingerie, and suggestive poses.  He also argues that literature like the *Vampire Queen* novel, which may include some sexual references, should be favored by the prison because they give inmates a release other than engaging in prohibited nonconsensual homosexual activity.

Mills contends that the exaggerated response of excluding non-nude materials and publications with mild or no sexual overtones is motivated by the DOC and prison officials' "Christian" influence.  He states that he is not challenging the prison's decision to specifically

---

[103] LA. REV. STAT. ANN. § 36:403 ("The secretary shall serve as the executive head and chief administrative officer of the Department of Public Safety and Corrections and shall have the responsibility for the policies of the department except as otherwise provided by this Title, and for the administration, control, and operation of the functions, programs, and affairs of the department[.]"); *id.* § 36:404(A)(2).

reject the pictures and publications he ordered.  Rather, he challenges the constitutionality of the DOC's overly restrictive definitions of what constitutes "sexually explicit materials" and the exaggerated use of the policy to prohibit materials that are not considered sexually explicit in other jurisdictions and the federal prison system.

a.    Regulations and a Prisoner's First Amendment Rights

A prisoner retains First Amendment rights to the extent that such rights "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."[104] To further the legitimate interest in preventing deviant, criminal sexual behavior in prison, "officials may limit prisoners' access to sexually explicit materials even if they are not obscene."[105]  When considering the prison's determination regarding receipt of particular materials and publications, the courts strike a "delicate balance" between the prison's rehabilitation and security objectives and the prisoner's First Amendment rights.[106]  The rejection of materials and publications is subject to evaluation under a reasonableness standard, and are to be upheld if they are "reasonably related to legitimate penological interests."[107]

In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court explained that to determine whether a prison regulation impinges on an inmate's constitutional rights, the court should consider four factors:

(1)    whether the regulation is "rationally related" to a legitimate penological goal;

(2)    whether alternative means of exercising First Amendment rights remain open to the inmate;

---

[104] *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

[105] *Stroble v. Livingston*, 538 F. App'x 479, 480 (5th Cir. 2013) (citing *Thompson v. Patteson*, 985 F.2d 202, 205–06 (5th Cir.1993)).

[106] *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).

[107] *Id*. at 404 (quoting *Turner v. Safely*, 482 U.S. 78, 89 (1987)).

(3)    the impact that accommodating the asserted constitutional right will have on other inmates, guards and prison resources; and

(4)    the presence or absence of ready alternatives that fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests.[108]

The Supreme Court, however, does not require a court to weigh evenly, or even consider, each of the *Turner* factors.[109]  "[R]ationality is the controlling factor,"[110] and the remaining factors are best understood as indicators of rationality.[111]

When a regulation restricts First Amendment rights in a neutral fashion, it is likely to withstand judicial scrutiny.[112]  Neutrality means that "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression."[113]  Prison regulations that "draw distinctions between publications solely on the basis of their potential implications for prison security" are considered facially neutral.[114]

Plaintiff bears the burden of showing that the regulation, as applied, is not reasonably related to legitimate penological objectives,[115] or that it is an "exaggerated response" to those concerns.[116]  Plaintiff must overcome the substantial deference granted to prison administrators in determining the "appropriate means of furthering penological goals" because they "bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."[117]

---

[108] *Turner*, 428 U.S. at 89-91; *Thornburgh*, 490 U.S. at 414-18; *Prison Legal News v. Livingston*, 683 F.3d 201, 214-15 (5th Cir. 2012).

[109] *Scott v. Miss. Dep't. of Corr.*, 961 F.2d 77, 80-81 (5th 1992).

[110] *Mayfield v. Tex. Dep't. of Crim. Just.*, 529 F.3d 599, 607 (5th Cir. 2008).

[111] *Scott*, 961 F.2d at 80-81.

[112] *McAlister v. Livingston*, 348 F. App'x 923, 931-32 (2009) (citing *Thornburgh*, 490 U.S. at 415).

[113]  *Thornburgh*, 490 U.S. at 415 (quoting *Procunier v. Martinez*, 416 U.S. 396, 413 (1974)).

[114] *Id.* at 415-16.

[115] *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

[116] *Beard v. Banks*, 548 U.S. 521, 528 (2006) (citing *Turner*, 482 U.S. at 87).

[117] *Overton*, 539 U.S. at 132.

28

As to the second prong of the *Turner* analysis – whether there are alternative means of exercising the right – Mills has alleged the existence of alternative means and provisions available to him through materials available in the prison library and through publication that could be purchased that were not on the DOC's Rejection List.  He has not alleged that the prison has declined other accommodations that would be of little cost or impact on prison resources.

Mills also alleges that he also expected to receive a picture catalog from Acme Publications that was not given to him or addressed by the RCC officials.  Mills is unsure what happened to the catalog or whether it actually arrived since he did not get a receipt for the order.  In either event, the catalog was not specifically rejected by the prison authorities, its receipt by the mailroom simply was not addressed or acknowledged.  Any claim that he was negligently or intentionally deprived of the catalog without proper process is not a constitutional violation cognizable under § 1983.[118]

      b.    <u>Mills' Photographs, Catalogs, and Publications</u>

Mills asserts in his complaint and *Spears* hearing testimony that, through application of regulations like Department Regulation C-02-009, the DOC and prison officials have a legitimate interest in preventing materials and publications that are contrary to the legitimate goals for the prison authorities, such as prevention of sexual enticement, assault against female guards and prevention of deviate, criminal sexual behavior.  He also understands the prison's need to prohibit pornography, nudity, erotica, depictions of homosexuality, and similar sexually explicit content. He challenges, however, what he describes as an exaggerated response by prison officials based

---

[118] *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984);*Parratt v. Taylor*, 451 U.S. 527 (1981)); *Daniels v. Williams*, 474 U.S. 327 (1986); *Wilson v. Holt*, 158 F. App'x 546(5th Cir. 2005); *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990).

on overly restrictive definition of sexually explicit material (e.g., women in swimwear, lingerie, and suggestive poses and literature that mentions sexual conduct without meaning to be erotically stimulating).  He asserts that "sexually explicit" should not include publications and literature that may have some sexual content or references but are not designed to be enticing or homosexual in nature.  He also challenges the use of Department Regulation C-02-009 to prohibit some materials and publications when other similar materials are allowed and even available in the RCC library.

As discussed above, prison officials may impose regulations and policies that impinge on a prisoner's First Amendment rights when the restrictions are reasonably related to a legitimate penological interest.[119]  In connection with sexually explicit materials, the Fifth Circuit has held that prison officials are not required to prove that a restricted material or publication will actually cause a problem in the prison; instead, application of the regulation may legitimately be based on a prison administrator's reasonable assessment of the potential for contravention of legitimate prison goals.[120]

The Fifth Circuit has upheld regulations similar to Department Regulation C-02-009 restricting the receipt of materials and publications with explicit sexual content that is deemed harmful to the security of the institution and rehabilitation of inmates.[121]  In *Thompson*, the Fifth Circuit considered an inmate's First Amendment challenge to the application of a Texas prison policy that allowed officials to reject some sexually explicit materials but allow other similar materials.[122]  The Fifth Circuit first recognized that the Texas regulation was consistent with the

---

[119] *Turner*, 482 U.S. at 89; *Stroble v. Livingston*, 538 F. App'x 479, 480 (5th Cir. 2013) (citing *Brewer v. Wilkinson*, 3 F.3d 816, 820-21, 825-26 (5th Cir. 1993)).
[120] *Prison Legal News*, 683 F.3d at 216.
[121] *Thompson v. Patteson*, 985 F.2d 202, 206-07 (5th Cir. 1993) (citing *Thornburgh*, 490 U.S. at 413; *Guajardo v. Estelle*, 580 F.2d 748, 762 (5th Cir. 1978)).
[122] *Id*. at 204-05.

30

need for rehabilitation and security, both of which were legitimate penological interests.[123]  The court recognized the prison's legitimate interest in preventing deviate, criminal sexual behavior within the prison population.[124]  Thus, the court held that prison officials may limit prisoners' access to sexually explicit materials, even if the materials are not obscene.[125]  The court also rejected the disparate treatment argument, noting plaintiff had not alleged that the alleged disparate treatment was based on any protected characteristic.[126]

The Fifth Circuit relied on its holding in *Thompson* to summarily foreclose a claim by another inmate that his constitutional rights were violated when prison officials allowed him to receive certain sexually explicit materials but rejected others.[127]  In *Stroble*, the Fifth Circuit also relied on *Thompson* and related cases to address a prisoner's claim that Texas prison officials violated his First Amendment rights when they misinterpreted the meaning of "sexually explicit" and, as a result, denied him access to images that were actually permissible.[128]  The Fifth Circuit held that prison regulations "necessarily confer a certain degree of discretion on prison authorities" to determine what constitutes impermissible sexually explicit material.[129]  Further, a claim that prison officials failed to properly follow prison policy is not itself a constitutional violation.[130]

Similar to the plaintiffs in these cases, Mills received rejection notices providing the reasons his materials were prohibited under Department Regulation C-02-009 as sexually explicit. This notice with an opportunity to challenge the rejection also distinguishes Mills' case from the

---

[123] *Id*. at 206-07.
[124] *Id*. 205-06.
[125] *Id*.
[126] *Id.* at 207.
[127] *Burghart v. Scott*, 31 F. App'x 154, 2001 WL 1748207, at *1 (5th Cir. Dec. 12, 2001).
[128] *Stroble v. Livingston,* 538 F. App'x 479 (5th Cir. 2013).
[129] *Id*. at 480 (quoting *Thompson*, 985 F.2d at 207).
[130] *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009).

Fifth Circuit's recent decision in *Abshire v. Mailroom, Raymond Laborde Correctional Center*,[131] in which the court determined that the lack of notice and an opportunity to challenge the decision can present a non-frivolous procedural due process claim under the Fourteenth Amendment. In this case, Mills has made clear that he does not challenge the rejection of his materials under the Fourteenth Amendment. Rather, unlike *Abshire*, Mills recognizes that the prison officials' have a legitimate penological interest in culling sexually explicit material from the prisons. Mills is instead challenging the prison policy based on the officials' alleged overly broad definition of what constitutes sexually explicit material. In response to one of his grievances, attached to Mills § 1983 complaint, Warden Tanner wrote:

> Regarding publications, Department Regulation #OP-C-7 states, "publications containing any picture, photograph, drawing or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, sadomasochistic abuse, bestiality and homosexuality or detailed verbal descriptions or narrative accounts of sexually explicit conduct will not be allowed."[132]

Mills appreciates the DOC's right to have policies like this that prohibit sexually explicit materials, but disagrees with the breadth of materials, *e.g.* photographs of swimwear, lingerie, and suggestive poses, that the DOC includes in that policy based on what he describes as overly broad definition "sexually explicit." However, the First Amendment does not mandate that prison officials provide definitions or explain the reasoning behind their regulations to inmates. Instead, the Supreme Court and the Fifth Circuit have recognized that deference must be given to the prison officials in promulgating regulations necessary to maintain discipline and other legitimate

---

[131] *Abshire v. Mailroom, Raymond Laborde Correctional Center*, No. 19-30468, 2021 WL 2907796, at *2 (5th Cir. Jul. 9, 2021).
[132] ECF No. 1-2, at 15.

penological goals.[133]   The Supreme Court also has made clear that the First Amendment only requires that the regulation be rationally related to a legitimate government interest,[134] and officials do not have to establish that a rejected material or publication would actually cause damage to penological goals.[135]

The Fifth Circuit has repeatedly rejected arguments like those made by Mills in his challenge to the discretionary interpretation and application of DOC regulations prohibiting sexually explicit materials.   Mills' disagreement with DOC's definition of sexually explicit material is insufficient to establish that the regulation is not rationally based on a legitimate penological goal, including the protection of female guards and prevention of inappropriate sexual behavior among inmates.   Likewise, his assertion that DOC officials' definition of sexually explicit includes material that is not erotic or meant to sexually excite the reader is insufficient.   As the Fifth Circuit has made clear, there is no requirement that prison regulations only prohibit materials that would be considered obscene.[136]   Some pictures depicting women in swimwear, lingerie, and suggestive poses can be sexually explicit even without being blatantly erotic or obscene.

In short, Mills presents insufficient allegations under the *Turner* factors to survive the court's frivolousness review.

### 3.    The Complaint Does Not Raise An Establishment Clause Claim

Mills also suggests that application of the policy to prohibit items like swimwear and lingerie is motivated by the overarching "Christian" influence within the DOC.   He alleges that the "new Warden" at RCC, who is not a defendant, said during one conversation that he hoped

---

[133] *Thornburgh*, 490 U.S. at 418; *Thompson*, 985 F.2d at 207.
[134] *Thompson*, 985 F.2d at 207.
[135] *Prison Legal News*, 683 F.3d at 214.
[136] *Thompson*, 985 F.2d at 205-06.

Mills' would find God someday.  Mills claims that this exemplifies the Christian-influence in the prison system.  Liberally construed, these allegations present a claim that the Defendants violated the Establishment Clause of the First Amendment by promoting Christianity within a state prison.

The Supreme Court has interpreted the First Amendment's Establishment Clause to mean that the government may not promote or affiliate itself with any religious doctrine or organization and may not discriminate among persons on the basis of their religious beliefs and practices.[137] To violate the Establishment Clause, a state policy need not be formal, written or approved by an official body, but it must be sufficiently imbued with the state's authority to constitute state endorsement of religion.[138]  A prison regulation does not violate the Establishment Clause if the regulation has a secular purpose, its principal or primary effect does not advance or inhibit religion, and it does not cause an excessive entanglement between government and religion.[139]

Mills has not alleged that the DOC regulations, like Department Regulation C-02-009, violates any of these factors as necessary to state a claim under the Establishment Clause of the First Amendment.  He instead assumes that the comments of one official exemplifies religious motives within the entire prison system.  The new warden's comment is insufficient to allege a state sponsorship of religion, much less one that can be imputed into the regulation Mills' challenges here.  "To the extent that the regulation promotes goals that may also be consistent with religious beliefs (*e.g.*, respect, nonviolence), such impact neither advances one religion over another, nor establishes a religion."[140]

---

[137] *County of Allegheny v. ACLU*, 492 U.S. 573, 590 (1989).

[138] *See Canell v. Lightner*, 143 F.3d 1210, 1214-15 (9th Cir. 1998) (denying inmate's claim that correctional officer's evangelical activities constituted state endorsement of religion because activities were not sanctioned in any way by policy of correctional facility or staff and were short-term and sporadic).

[139] *Lynch v. Donnelly*, 465 U.S. 668, 678-679 (1984) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 613-14 (1971)).

[140] *Alexander v. Cal. Dept. of Corrs.*, No. 08-2773, 2012 WL 439498, at *15 (E.D. Cal. Feb. 9, 2012).

### D.    Preliminary Injunction Must Be Denied

For the reasons set forth in Section II(B) and (C), Mills' claims against the defendants should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted. Based on these findings, and under the standards set forth above, Mills is not entitled to a preliminary injunction. Mills cannot carry his heavy burden of establishing the four requirements under Fed. R. Civ. P. 65.[141]  Indeed, he cannot demonstrate a substantial likelihood of success on the merits because his claims are frivolous.[142]  Therefore, his Motion for Preliminary Injunction (ECF No. 3) must be denied without further need for consideration of the remaining elements.

## IV.    CONCLUSION

A prisoner does not have a constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction. Thus, Mills cannot state a § 1983 claim based on alleged violations or failures in the grievance process, nor can he state a claim for conspiracy with regard to same. Mills' § 1983 claims based on the grievance process against these defendants are legally frivolous and the complaint fails to state a claim upon which relief can be granted. As such, the claims must be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A.

Likewise, Mills has not alleged a non-frivolous claim against Secretary LeBlanc under the First Amendment. He has not alleged more than conclusory assertions that Department Regulation C-02-009 or the discretionary application of it is an exaggerated response or otherwise not rationally related to the DOC's legitimate penological interests. His claims against Secretary

---

[141]*Planned Parenthood v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005)
[142] *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017).

LeBlanc in his official capacity should be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Mills' Motion for Preliminary Injunction (ECF No. 3) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Mills' § 1983 claims against defendants, Secretary James LeBlanc in his official capacity and Warden Robert Tanner, Captain Ernestine Smith, Lisa Jenkins, and Cynthia Crain, each in their individual capacity, be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[143]

New Orleans, Louisiana, this ___15th___ day of July, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[143]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).